IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

REBECCA FAYE BRAKE )
)
    Plaintiff, )
)
v. ) Case: 3:09-CV-00271
) JUDGE HAYNES
METROPOLITAN LIFE )
INSURANCE COMPANY )
And BRANDI NICOLE BRAKE )
)
    Defendants. )

## MEMORANDUM

Plaintiff, Rebecca Faye Brake, originally filed this action in the Chancery Court of Williamson County against the Defendants Metropolitan Life Insurance Company ("MetLife") and Brandi Nicole Brake. Plaintiff sought a declaratory judgment on her rights to benefits under a plan administered by MetLife for which Brandi Brake, her deceased husband's daughter, was the designated beneficiary. The Defendant MetLife removed the action, asserting that Plaintiff's claims arise under the Employee Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461 (the "Plan"). After removal, this Court appointed Grant Glassford as guardian ad litem for Brandi Brake. MetLife deposited the Plan Benefits in the amount of the Plan's benefits, $312,000.00, with this Court and the Plaintiff's claims against MetLife were dismissed with prejudice. The Court has subject matter jurisdiction over this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(e).

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 27) and memorandum in support thereof (Docket Entry No. 28). The child of the

1

deceased, Brandi Nicole Brake also filed a motion for judgment on the administrative record. (Docket Entry No. 30).

## I. Findings of Facts[1]

Plaintiff was married to Neil Brake for sixteen years. Brandi Nicole Brake is the only child of Plaintiff and her husband. Plaintiff and her deceased husband moved with their child to Franklin, Tennessee in 2000 for his employment with Vanderbilt University. The benefits at issue are payable under the Vanderbilt University Life and Accidental Death and Dismemberment Plan, an employee welfare benefits plan, regulated by ERISA and administered by MetLife. Vanderbilt University provided the husband with $78,000 of life benefits and the husband obtained an additional $234,000.00 of supplemental life benefits. The husband designated Plaintiff as the beneficiary of the Plan Benefits in October 2000.

On February 20, 2008, Plaintiff filed a complaint for divorce against her late husband in Circuit Court of Williamson County, Tennessee. Plaintiff cited irreconcilable differences and inappropriate marital conduct as the grounds for her complaint. Upon the filing of the complaint, the Circuit Court entered a Temporary Restraining Order that provided as follows:

> Each party is restrained and enjoined from voluntarily canceling, modifying, terminating, assigning, or allowing to lapse for nonpayment of premiums, any insurance policy of a party or child of the parties has interest without permission of the Court by consent order.

---

[1] As discussed infra, the pending motions are in effect motions for summary judgment. Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon filing a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Under the applicable law and the parties' factual submissions, the Court concludes there are not any material factual disputes. This section constitutes findings of fact under Fed. R. Civ. P. 56(d).

2

(Docket Entry No. 28, Attachment No. 1, Temporary Restraining Order).

On March 19, 2008, without notice to Plaintiff or the Circuit Court's permission, the husband changed the beneficiary of his Plan Benefits. (Docket Entry No. 28, Attachment No. 2, Beneficiary Change Form). On March 19, 2008, the husband also executed a beneficiary change form, designating his daughter, Brandi Brake, as the primary beneficiary 100% of the Plan Benefits. The husband's mother, Joan W. Brake, was designated the contingent beneficiary of 100% of the Plan Benefits. This change of beneficiary violated the February 20, 2008 Temporary Restraining Order.

On November 4, 2008, the husband took his own life while the divorce was pending. After her husband's death, Plaintiff discovered her husband had changed the beneficiary of the Plan Benefits in violation of the Circuit Court's Temporary Restraining Order. Plaintiff then filed a claim with MetLife for the benefits, but MetLife denied her claim on February 13, 2009. Plaintiff then filed her state court action in the Chancery Court that was removed to this Court.

## II. Conclusions of Law

Under ERISA, upon a motion for judgment on the administrative record, the Court's review is limited to the administrative record. If a plan governed by ERISA clearly grants its administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then the Court reviews it de novo. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); McMahan v. New England Mut. Life Ins. Co., 888 F.3d 426, 430 (6th Cir. 1989). Because the relief sought is beyond the scope of administrative review, the Court considers both Plaintiff and Defendant's motions as motions for summary judgment on Plaintiff's equitable claim for the creation of a constructive trust. See Cent. States, Southeast &

3

Southwest Areas Pension Fund v. Howell, 227 F.3d 672, 674 (6th Cir. 2000) (summary judgment appropriate for constructive trust claim); see also Blachy v. Butcher, 221 F.3d 896, 903 (6th Cir. 2000).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F. 2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

4

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parities as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ' which it believes demonstrate the absence of a genuine issue of material fact....[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claims. 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kockins v. Lindin-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he Defendant must adduce more than a scintilla of evidence to overcome the motion [and]...must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

5

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
>                               \*   \*   \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicated the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in the run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that a plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In a ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute....'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn there from must be read in a light most favorable to the party opposing motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

6

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily appropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. Thus burden may be met by pointing out to the court that the Defendant, having had sufficient opportunity for discovery, has no evidence to support an essential element of his claim.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the Defendant must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the Defendant's case, such as proof by clear and convincing evidence, must be satisfied by the Defendant.

8. The Defendant cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the Defendant's evidence. The Defendant must 'do more than simply show

7

> that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the Defendant, the motion should be granted. The trial court has at least some discretion to determine whether the Defendant's claim is 'implausible.'

Street, 886 F.2d at 1479-80

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party; are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### A. Plaintiff's Constructive Trust Claim

The facts here are not undisputed. (Docket Entry No. 30, Attachment No. 1, Resp. Mem. Supp. of J. at 1). The parties agree that the husband violated the Circuit Court's February 20th Temporary Restraining Order ("TRO") by changing the beneficiary to his insurance plan with MetLife. Given the change of designation, the only issue is the appropriate remedy.

ERISA completely preempts most state laws, 29 U.S.C. § 1144(a), and divorce decrees, preliminary injunctions, and TROs purporting to affect the benefits payable under an ERISA plan are preempted by ERISA. Unicare Life & Health Ins. Co. v. Craig, 157 Fed.Appx. 787, 791 (6th Cir. 2005). An exception, however, exists under ERISA for qualified domestic relations orders ("QDRO"). 29 U.S.C. § 1056(d)(3). To satisfy this exception as a QDRO, a domestic relations order must strictly conform to ERISA's statutory requirements:

8

> (B)(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which - (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant, and (II) is made pursuant to a State domestic relations law (including community property law).
>
> (C) A domestic relations order meets the requirements of this subparagraph only if such clearly specifies - (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)

The TRO here issued automatically upon the filing of Plaintiff's petition for divorce, but lacks the specific details necessary to satisfy the definition of a QDRO. (Docket Entry No. 28, Attachment No. 1, Temporary Restraining Order). The state divorce petition refers to life insurance policies only in the most general terms, and therefore, does not meet the requirements of this exception. The TRO is therefore preempted by ERISA. In such instances, the plan administrator, MetLife had to administer the plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Any judicial review of the administrator's actions is unnecessary as both parties agree that the administrator correctly denied Plaintiff's claim for the Plan Benefits. (Docket Entry No. 28, Pet. Mem. Supp. of J. at 5; Docket Entry No. 30, Attachment No. 1, Resp. Mem. Supp. of J. at 4-5). Thus, judgment on the administrative record is therefore inappropriate.

Yet, this Court retains its equitable jurisdiction to redistribute benefits covered under ERISA when a party acts inequitably. Howell, 227 F.3d at 679. In an ERISA context, once the benefits have been paid to the beneficiary, the Court may create a constructive trust, if equity so

9

Case 3:09-cv-00271   Document 33   Filed 06/25/10   Page 9 of 13 PageID #: 116

demands. Id. For this reason, the Court considers the parties' cross-motions for judgment on the administrative record as motions for summary judgment. Id.

In Tennessee, "[e]quity regards that as done which in good conscience ought to be done." Holt v. Holt, 995 S.W.2d 68, 71 (Tenn. 1999) (quoting McCann Steel Co. v. Third Nat. Bank, 337 S.W.2d 886, 891 (Tenn. Ct. App. 1960)). Tennessee courts exercise their equitable jurisdiction to impose a constructive trusts, to "protect persons legally mandated to be listed as beneficiaries of a life insurance policy." Id. at 72. Constructive trusts are also used in Tennessee to avoid the unjust enrichment of a person who:

> by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, **or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not, in equity and good conscience hold and enjoy.**

Id. (quoting Rowlett v. Guthrie, 867 S.W.2d 732, 734 (Tenn. Ct. App. 1993)) (emphasis added).

Tennessee courts hold that a divorce decree mandating an individual to be listed as a beneficiary of a life insurance policy existing at the time of the decree vests in that individual an equitable interest in the designated policy, and the deprivation of that interest requires the creation of a constructive trust. See e.g. Goodrich v. Massachusetts Mut. Life Ins. Co., 240 S.W.2d 263 (Tenn. Ct. App. 1951); Herrington v. Boatright, 633 S.W.2d 781 (Tenn. Ct. App. 1982).

The question remains whether the TRO here was the functional equivalent of a final divorce decree or otherwise sufficient to justify imposing a constructive trust on the Plan's benefits. Brandi Brake contends that the TRO issued by the Circuit Court of Williamson County under T.C.A. § 36-4-106(d) lacks the same legal effect as a divorce decree, and therefore, the

10

TRO did not grant Plaintiff a vested interest in the Plan's benefits. (Docket Entry No. 30, Attachment No. 1, Resp. Mem. Supp. of J. at 3). Without a vested interest, the Defendant argues that Plaintiff lacks any equitable interest in the Plan benefits, and imposing a constructive trust is inappropriate. Id. The Court respectfully disagrees.

In the Court's view, TROs under Tenn. Code Ann. § 36-4-106(d) have the same legal effect as preliminary injunctions. Under this statute, notice is given to the party who is placed under a restraining order and the TRO remains in force until a "court modifies or dissolves the injunction." Id. Unlike federal TROs under Fed. R. Civ. P. 65(b)., TROs under § 36-4-106(d) issue automatically after the filing of a petition for divorce and do not expire absent a court order. Id. As it were with a preliminary injunction, both parties have notice of the TRO. T.C.A. § 36-4-106(d). The TRO remains in force until the issuance of a final divorce decree. The Sixth Circuit stated that preliminary injunctions potentially implicate the same equitable principles as divorce decrees and a violation of a preliminary injunction to change beneficiaries on an ERISA covered plan may require the imposition of a constructive trust. Howell, 227 F.3d at 679.

In considering the equities here, the Court considers applicable Tennessee law. In Tennessee, the willful violation of a divorce decree can result in civil and criminal contempt. Long v. McAllister-Long, 221 S.W.3d 1, 9-10 (Tenn. Ct. App. 2006) (listing contempt as a proper remedy for violation of a divorce decree). Tennessee courts extend contempt proceedings to violations of a preliminary injunction. Aladdin Indus., Inc. v. Associated Transp., Inc., 323 S.W.2d 222, 229 (Tenn. Ct. App. 1959). Tennessee has a strong public policy in enforcing the orders of its courts. Holt, 995 S.W.2d at 77. In this statutory scheme, under Tenn. Code Ann. §

11

36-4-106(a), TROs and preliminary injunctions are functional equivalents that vest the parties with certain rights protected by court order pending further proceedings.

Here, the husband clearly violated the Circuit Court's order by changing the beneficiary of his plan to Brandi Brake. (Docket Entry No. 28, Attachment No. 2, Beneficiary Change Form). Upon issuance of the TRO, Plaintiff's interest in the Plan Benefits effectively vested subject to later modification by the Circuit Court. As a matter of law, with a vested interest in her husband's Plan benefits after the issuance of the TRO, Plaintiff was deprived of that interest by the husband's violation of the TRO. The Court concludes that imposition of a constructive trust therefore is appropriate here. Holt, 995 S.W.2d at 72.

Brandi Brake correctly asserts that she did not perpetrate any wrongful or fraudulent act for her receipt of the Plan Benefits. (Docket Entry No. 30, Attachment No. 1, Resp. Mem. Supp. of J. at 4). Yet, property that cannot be held in "equity and good conscience" may be placed in a constructive trust for the benefit of a wronged party. Holt, 995 S.W.2d at 72. The husband's violation of TRO is the wrong here that equity seeks to remedy. The Court concludes that equity requires the creation a constructive trust for Plaintiff's benefit to remedy the husband's willful violation of the TRO and the Defendant's unjust enrichment. The effect of a constructive trust is to convey the Plan's benefits to the Plaintiff. John H. Langbein, "The Contractarian Basis of the Law of Trusts," 105 Yale L. J. 625, 631 n. 29 (1995) ("The constructive trust is not in fact a trust, but a remedy which is explained by analogy to trusts.") (citing 1 Dan B. Dobbs, Law of Remedies § 4.3(2), at 401 (2d ed. 1993).

The Court concludes that Plaintiffs' motion for summary judgment should be granted to impose a constructive trust of the Plan benefits and to convey those benefits to the Plaintiff.

12

Case 3:09-cv-00271   Document 33   Filed 06/25/10   Page 12 of 13 PageID #: 119

An appropriate Order is filed herewith.

**ENTERED** on this the _25th_ day of June, 2010

                                                  WILLIAM J. HAYNES, JR.
                                                United States District Judge